Rochester Machine Corporation, Petitioner *v.* Commonwealth of Pennsylvania Unemployment Compensation Board of Review, Respondent.

Don Emerick, Intervenor.

328

■■■■■■■■

Argued April 8, 1981, before President Judge CRUMLISH and Judges BLATT and MACPHAIL, sitting as a panel of three.

*John J. Petrush, Petrush & Miller,* for petitioner.

*William J. Kennedy,* Associate Council, with him *Richard Wagner,* Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

No appearance for intervenor.

OPINION BY JUDGE MACPHAIL, July 6, 1981:

Rochester Machine Corporation appeals from an order of the Unemployment Compensation Board of

Review (Board), which reversed the referee and found Don Emerick (Claimant) eligible for unemployment compensation benefits. Subsequent to a remand hearing for the taking of additional testimony by its hearing officer, the Board determined that Claimant was not guilty of willful misconduct under Section 402(e) of the Unemployment Compensation Law.[1]

Claimant was last employed by Rochester Machine Corporation (Employer) for three years at a final hourly rate of $7.75, his last day of work occurring on May 29, 1979. Claimant was employed as lead[2] man in the weld shop. Claimant's regular working hours were from 7:00 A.M. to 4:00 P.M. with fifteen minutes for lunch. Claimant was paid for one hour of overtime each day. During the eight months prior to his discharge, Claimant and his supervisors had several discussions about his leaving work prior to 4:00 P.M. and his decreasing productivity. In addition, it was Employer's contention that when Claimant left work early, he encouraged his co-workers to do the same. That contention was flatly denied by the Claimant.

In the early afternoon of May 20, Employer's president asked Claimant to meet with him at 4:00 P.M. Claimant apparently made no verbal response but the negative shake of his head was taken by the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e), which provides in relevant part:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . .

[2] From our review of the record, it is clear that the word "lead" is pronounced "led," to mean acting as a leader.

president as a refusal. Claimant's version is that there was so much noise and confusion at the work place that the president didn't hear Claimant's explanation of why he could not meet at 4:00 P.M. (car pooling). About a half an hour after the incident, Claimant was fired. Employer's president testified that the incident was ''the last straw that broke the camel's back.''

The Board concluded that the Employer failed to meet its burden of proving willful misconduct and made the following critical findings of fact:

3. During the period from September 20, 1978 through May 24, 1979 the claimant refused to work overtime on 18 occasions but did work overtime on numerous other occasions.

4. The claimant did not incite his co-workers to refuse overtime work.

5. On the claimant's last day of work he was asked by his employer at approximately 2 p.m. if he would meet with his employer at the conclusion of his working day to discuss business.

6. The claimant refused to meet with his employer at the end of his working day because he felt he might miss his car pool ride home.

7. Upon the claimant's refusal to meet with his employer, the claimant was discharged by his employer approximately an hour and a half before the end of the claimant's working day.

8. The claimant was not warned during the course of his employment that refusal to work overtime would result in his discharge.

In its brief and in oral argument, the Board went to great lengths to indicate that its third finding of fact regarding the overtime problem was not based

upon competent evidence. To say the least, it is unusual for the Board to argue against its own fact finding and we take a dim view of its attempt to do so. Having once made a finding of fact, we think the Board is bound by it, although it is true that this Court has on occasion held that an *incorrect* finding of fact by the Board which was not prejudicial to the losing party would not prevent this Court from affirming the Board.

Here, however, the circumstances are different. The Board has found that on eighteen occasions the Claimant refused to work overtime in an eight month span of time. It would seem from the Board's wording of this finding that the Claimant was asked on eighteen occasions to work overtime, and that he refused each request. However, it is clear from the record that Claimant knew *at time of hire* that he had a nine-hour shift Monday through Friday.[3] Employer required and expected Claimant to work overtime as his normal schedule from the start. In *Reed v. Unemployment Compensation Board of Review*, 51 Pa. Commonwealth Ct. 231, 414 A.2d 172 (1980), we held that although an employee's refusal to work in accordance with the schedule reasonably established by the employer will normally constitute willful misconduct, it may not constitute misconduct if the employee shows that his actions were justifiable and reasonable under the circumstances. In the instant case, the Board has made no finding with respect to the reasonableness of the Claimant's refusal to work his nine-hour shift.

Although the Board did find that the Claimant was not warned that his refusal to work a nine-hour

---

[3] At the remand hearing, counsel for Employer asked Claimant, "And you knew when you were hired at Rochester Machine, that you had a nine hour shift Monday through Friday and an eight hour turn on Saturday, correct?" Claimant responded "Yes."

shift would result in his discharge, this Court has held that an advance warning is not a pre-condition or prerequisite to a discharge for willful misconduct. *American Process Lettering, Inc. v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 272, 412 A.2d 1123 (1980).

Moreover, it is not clear from the Board's decision what it found as the reason for Claimant's discharge. The Board states that the discharge occurred *after* the incident concerning Claimant's alleged refusal to meet with Employer's president but that statement merely sets the time frame within which the discharge occurred; it does not determine the reason or reasons for discharge.[4]

It is well settled that where the Board has failed to make necessary findings, the case must be remanded. *Page's Department Store v. Velardi*, 464 Pa. 276, 346 A.2d 556 (1975). In the instant case, the Board's finding that Claimant refused to work the required overtime without a concurrent finding with respect to Claimant's justification for his refusal to work is inadequate for us to perform our appellate review. Likewise, the Board's failure to find as a fact the reason for Claimant's discharge, especially where there is a conflict in the evidence on that isue, makes it impossible for us to determine whether the Board's conclusion that the Employer failed to meet its burden of proving willful misconduct is correct.

Accordingly, this case must be remanded to the Board for further findings.

---

[4] A letter sent to the Bureau (now Office) of Employment Security by Employer's president was admitted as a part of the record in this case. The letter sets forth five reasons why Claimant was discharged. Employer's president also testified at both the hearings before the referee at which times he offered testimony concerning the reasons for discharging the Claimant.

## ORDER

AND Now, this 6th day of July, 1981, the order of the Unemployment Compensation Board of Review, dated March 7, 1980, is vacated and the case is remanded to the Board for further findings of fact.